IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BUTLER NATIONAL SERVICE | ) | |
| CORPORATION and BHCMC, LLC, | ) | |
| | ) | CONSOLIDATED CASES |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 09-2466-JWL |
| | ) | |
| NAVEGANTE GROUP, INC. and | ) | |
| LARRY J. WOOLF, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| NAVEGANTE GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-2554-JWL |
| | ) | |
| BUTLER NATIONAL SERVICE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| LARRY J. WOOLF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-2444-JWL |
| | ) | |
| CLARK D. STEWART, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

These consolidated cases presently come before the Court on the motion (Doc.

# 146) by Butler National Service Corporation ("Butler"), BHCMC, LLC ("BHCMC"), and Clark Stewart, by which Butler seeks summary judgment on claims asserted against it by Navegante Group, Inc. ("Navegante") (Case No. 09-2554); Mr. Stewart seeks summary judgment on claims asserted against him by Larry Woolf (Case No. 10-2444); and Butler and BHCMC seek summary judgment on their claim against Navegante and Mr. Woolf for a declaratory judgment (Case No. 09-2466).  As more fully set forth below, the Court **grants** the motion by Butler relating to Navegante's claims and awards summary judgment in Butler's favor on those claims; **denies** the motion by Mr. Stewart for summary judgment on Mr. Woolf's claims; and **denies** the motion by Butler and BHCMC for summary judgment on their declaratory judgment claim.

## I.      Background

The three cases in this consolidated litigation involve, on one side, Butler and Mr. Stewart (President and CEO of Butler's parent company), and on the other side, Navegante and Mr. Woolf (Navegante's founder, CEO, and principal shareholder).  The litigation concerns the involvement of Navegante and Mr. Woolf in Butler's application to and eventual licensing by the State of Kansas to operate the Boot Hill Casino & Resort in Dodge City, Kansas.  BHCMC, an affiliate of Butler, was created to act as the management company for the casino.

In Case No. 09-2466, Butler and BHCMC allege that Butler entered into a consulting agreement with Navegante concerning the casino project; that the parties did

not enter into a management contract; that neither Navegante nor Mr. Woolf was ever granted any equity position in Butler or the casino project; and that Navegante and Mr. Woolf have asserted that their rights extend beyond the consulting agreement and include a percentage of the project. Based on those allegations, Butler and BHCMC seek a declaratory judgment to the effect that the rights of Navegante and Mr. Woolf in the project are limited to the consulting agreement. Butler and BHCMC also allege in a separate count that Navegante breached that agreement by failing to perform certain services.

In Case No. 09-2554 (initiated after filing but before service of the complaint in Case No. 09-2466), Navegante asserts two state-law claims against Butler. First, Navegante asserts a claim for breach of fiduciary duty, based on Navegante's alleged provision of consulting services for which Butler did not pay full value. Second, Navegante asserts a claim for negligent misrepresentation, based on the allegation that "Butler negligently misrepresented commercial information related to its present intention to enter into a formal written master agreement with Navegante under which Navegante would participate long-term in the management operations of the Boot Hill Casino and Resort." Pretrial Order ¶ 6.B.1.b. Navegante's motion to amend to add an affirmative fraud claim and its subsequent motion to amend to add a claim of fraud by silence were denied.

In Case No. 10-2444 (filed during the pendency of Navegante's first motion to amend), Mr. Woolf asserts two state-law claims against Mr. Stewart. Mr. Woolf first

3

asserts a claim for breach of fiduciary duty, based on the allegation that the two men were joint venturers or partners.  Mr. Woolf also asserts a claim of fraud by silence, based on the allegation that Mr. Stewart failed to disclose that he did not intend to allow Mr. Woolf to participate in the ongoing revenue stream for the casino project.  On February 7, 2011, the Court dismissed Mr. Woolf's complaint for lack of standing, on the basis that Mr. Woolf had not asserted a plausible claim that he had suffered damages separate from those suffered by Navegante.  The Court granted Mr. Woolf leave to amend to cure that deficiency, however, and Mr. Woolf did file an amended complaint.

The Court consolidated the three cases for pretrial purposes, and subsequently the Court consolidated the cases for trial as well.

## II.     Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *Id*.

4

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.   Navegante's Unjust Enrichment Claim Against Butler

Butler seeks summary judgment on Navegante's claim for unjust enrichment. Butler argues that because the consulting agreement executed by Butler and Navegante governed the terms of payments to Navegante for consulting services, Navegante cannot maintain a claim under Kansas law[1] for unjust enrichment to recover payment for those services. *See, e.g.*, *Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996) ("Courts applying Kansas law have concluded that quantum meruit and restitution are not available theories of recovery when a valid, written contract addressing the issue exists.").

Navegante has not opposed this argument or addressed the unjust enrichment claim at all in its response brief.  Accordingly, the Court grants Butler's motion as unopposed as it relates to this claim, *see* D. Kan. Rule 7.4(b), and Butler is awarded summary judgment on Navegante's claim for unjust enrichment.


**IV.     Navegante's Negligent Misrepresentation Claim Against Butler**

Butler also seeks summary judgment on Navegante's claim for negligent misrepresentation.  As noted above, in the Pretrial Order governing the parties' claims, this claim by Navegante is based on the allegation that "Butler negligently misrepresented commercial information related to its present intention to enter into a formal written master agreement with Navegante under which Navegante would

---

[1]The parties agree that the claims by Navegante and Mr. Woolf are governed by Kansas law.

6

participate long-term in the management operations of the Boot Hill Casino and Resort." Pretrial Order ¶ 6.B.1.b.

Butler argues that under Kansas law, Navegante cannot maintain such a claim based on an alleged misrepresentation of future intent. Indeed, the Kansas Supreme Court has made clear that a claim for negligent misrepresentation cannot be based on a statement of an intent to perform in the future, and that there is no such claim for a "negligent promise." *See Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 218-22 (2000). Thus, the Court agrees with Butler that Navegante cannot maintain a claim under Kansas law that Butler negligently misrepresented an intention to enter into a management agreement with Navegante in the future, as asserted in the Pretrial Order.[2]

In its response brief, Navegante argues that Butler has misunderstood Navegante's claim as one based on a statement of future intent. Navegante attempts to recast its negligent misrepresentation claim as follows:

> In the case at bar, Navegante alleges that at various points in 2007 and 2008, [Butler] misrepresented the nature of its existing arrangement with Navegante. [Butler] misrepresented that [Butler] and Navegante had reached an agreement, and that under that agreement, Navegante was part of the long-term operational structure of Boot Hill. . . .

> The false information supplied by [Butler] concerned an *existing* fact—the existence of an agreement between Navegante and [Butler] regarding Navegante's long-term role. This information proved false in that [Butler] subsequently denied there was any agreement between the parties until the Consulting Agreement was executed in July 2008, and

---

[2] In light of this ruling, the Court declines to address Butler's alternative argument that Navegante cannot have reasonably relied on such a representation.

then took the position that the Consulting Agreement represented the entire sum and substance of the parties' arrangement.

Navegante argues that a "corollary" to that misrepresentation was a promise to memorialize the parties' oral contract in writing, upon which Butler seized in arguing that the alleged misrepresentation was one of future intent; but that the claim at issue actually resulted from Butler's ultimate denial that an agreement other than the consulting agreement had actually been reached between the parties. Thus, Navegante argues that its claim is not based on a statement of future intent (the intent to enter into a management agreement in the future), but rather is based on a statement of existing fact (the false statement that the parties had already entered into a contract).

Unfortunately for Navegante, however, that is not the claim stated in either Navegante's complaint or the Pretrial Order. Navegante has not sought leave to amend that claim, and leave would not be granted at this late date at any rate. Accordingly, Navegante's present recharacterization of its negligent misrepresentation claim cannot prevent summary judgment.[3]

---

[3]Even as recast, Navegante's negligent misrepresentation claim could not survive. First, as Butler points out, the claim is still, in essence, based on a statement of future intent, namely the intent to perform (and not deny the existence of) the oral agreement allegedly reached by the parties. Second, Navegante has not explained how it could reasonably have relied on the other contracting party to tell it whether an enforceable oral agreement had actually been reached—particularly in light of the fact that the statute of frauds would appear to preclude an oral agreement for Navegante's "long-term" participation. *See* K.S.A. § 33-106 (agreement not to be performed within one year must be in writing). Navegante has not cited any authority that would permit a claim that the other party negligently misrepresented that the parties had entered into an oral contract.

The Court therefore grants Butler's motion for summary judgment on all claims asserted against it by Navegante.

### V.   <u>Mr. Woolf's Standing to Assert Claims Against Mr. Stewart</u>

Mr. Stewart first seeks summary judgment on the claims asserted against him by Mr. Woolf on the basis that Mr. Woolf lacks standing to assert them. Mr. Stewart made this same argument in his motion to dismiss Mr. Woolf's original complaint. At that time, Mr. Stewart argued that Mr. Woolf had not alleged facts to show that he suffered harm separate from harm suffered by Navegante, a separate entity. The Court then applied the following rule of law relating to standing: "In general, the law is that conduct which harms a corporation confers standing on the corporation, not its shareholders." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (footnote omitted). "An exception to this rule allows a shareholder with a direct personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Id.* at 757 (internal quotation omitted).

In ruling on the motion to dismiss, the Court noted that, "although Navegante was undoubtedly involved here, Mr. Woolf certainly could allege that he personally, separate and apart from Navegante, was supposed to participate in the casino project and thus suffered harm from the allegedly wrongful conduct by [Mr. Stewart]—and Mr. Woolf argues that he has in fact so alleged in his complaint." Memorandum and Order of Feb. 7, 2011, at 11 (Doc. # 109). The Court reviewed Mr. Woolf's allegations, however, and

concluded that he had not pleaded facts supporting a plausible claim that he suffered damages separate and apart from damages suffered by Navegante, particularly in light of the allegations that Mr. Woolf would receive management fees through Navegante and the similar claim by Navegante for management fees in its own suit.  Thus, the Court dismissed Mr. Woolf's claims for lack of standing, but it granted him leave to amend to cure that pleading deficiency.  Mr. Woolf did file an amended complaint, and Mr. Stewart chose not to challenge the sufficiency of that pleading under Rule 12(b).

Mr. Stewart now repeats his prior argument that Mr. Woolf cannot have suffered a separate injury (namely, not receiving a share in the proceeds of the casino) because Navegante has also alleged that it was to receive a share in the proceeds.  The complaints filed by Navegante and Mr. Woolf, however, have now been supplanted by the Pretrial Order entered in the case, and in that document, only Mr. Woolf claims to have received a promise and was intended to share in the revenue stream of the casino.  Moreover, this issue of standing has now been raised in the context of a motion for summary judgment; thus, the Court does not merely examine the parties' allegations, but instead must determine whether Mr. Woolf has submitted evidence sufficient to withstand summary judgment concerning his standing to bring his claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff bears the burden of establishing standing and must do so "with the manner and degree of evidence required at the successive stages of the litigation").

The Court concludes that Mr. Woolf has submitted sufficient evidence to support

his burden to establish standing at this stage of the litigation.  The only pertinent evidence cited by Mr. Stewart in support of his motion is the fact that the names of Navegante and Mr. Woolf were used interchangeably to refer to both or either party. That fact alone, however, does not mean that Mr. Woolf could not have been the intended recipient of the share of revenue, while Navegante was only to be paid for services, as those parties have now alleged.  Mr. Woolf, on the other hand, has submitted deposition testimony by Navegante (given by its president, Richard Stevens, pursuant to Fed. R. Civ. P. 30(b)(6)) that Navegante would not have been the manager of the casino, and that Mr. Woolf would have been the manager, most likely through another entity that Mr. Woolf would own; that Mr. Woolf, not Navegante, would have made any investment of capital; that Mr. Woolf, not Navegante, was to receive the share in the revenue stream; and that other casinos have made payments directly to Mr. Woolf.  In his reply brief, Mr. Stewart has not attempted to show why these allegations are not sufficient to withstand summary judgment.

In addition, other evidence suggests that management fees might be paid to Mr. Woolf personally instead of to Navegante.  For instance, a draft memorandum of understanding from Navegante stated that Navegante or Mr. Woolf or a designee or affiliate would participate in ownership and serve as manager for the casino.  At a meeting with Butler personnel and the Kansas gaming board, Mr. Woolf stated, "I committed to [Mr. Stewart] that I would be an equity investor as well," and that he had committed his "personal money."  Butler represented to the Kansas board that it was

"teaming with Larry Woolf and Navegante."   In communications with potential investors, Mr. Stewart referred to Mr. Woolf as a planned investor in the project.  As Mr. Stewart himself notes, the names of Navegante and Mr. Woolf were used interchangeably by those parties; thus, construing the evidence in Mr. Woolf's favor, Mr. Woolf may have been the intended recipient of the share in the revenue stream, even if Navegante was also mentioned as the recipient.  Mr. Stewart also testified as follows:

> It's Larry Woolf, and Larry J. Woolf & Associates, and all of his friends are one package.  I never did distinguish from one to another.  It's all Larry J. Woolf & Associates, or Navegante, or whatever he's calling himself that day, so they are all the same person.[4]

Mr. Stewart will be free to argue at trial that, in light of all of the evidence, Mr. Woolf has failed to establish a separate injury as required for standing.  At this summary judgment stage, however, when the evidence must be viewed in Mr. Woolf's favor, Mr. Woolf has met his burden, and the Court denies this basis for summary judgment on Mr. Woolf's claims.

### VI.    Mr. Woolf's Fiduciary Duty Claim Against Mr. Stewart

Mr. Stewart seeks summary judgment on Mr. Woolf's claim against him for breach of fiduciary duty.  Mr. Stewart's sole argument with respect to this claim is that

---

[4]After a break and consultation with his attorney, Mr. Stewart testified that actually he and Butler dealt with only Navegante and no other entity.  At this stage, however, Mr. Stewart's testimony and his apparent attempt to retract unfavorable testimony must be viewed in the light most favorable to Mr. Woolf.

Mr. Woolf cannot show the existence of a fiduciary duty as a matter of law.

The Tenth Circuit has summarized Kansas law on fiduciary duties as follows:

Under Kansas law, a fiduciary relation exists in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and in due regard to the interests of the one reposing the confidence. Kansas courts have recognized two types of fiduciary relationships:

(1) those specifically created by contract such as principal and agent and those created by formal legal proceedings such as guardian and/or conservator and (2) those *implied in law* due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions.

We have held that conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law. An ordinary business relationship should not be construed as a fiduciary relationship, absent clear intent by the parties.

*Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1245 (10th Cir. 2006) (citations and internal quotations omitted).

Mr. Woolf argues that a fiduciary duty exists here because he and Mr. Stewart were joint venturers. In *Terra Venture*, the Tenth Circuit also summarized Kansas law on joint ventures:

Under Kansas law, a fiduciary duty generally exists between joint venturers. . . . A joint adventure is defined in general terms to be a special combination of two or more persons devoted to a specific enterprise in which profit is jointly sought without actual partnership or corporate designation. The relationship may arise from express contractual provisions or out of acts and conduct. When the relationship of joint adventurers exists, the parties stand in a close relationship of trust and confidence and are bound by the same standards of good conduct and square dealing as are required of partners. The factors for determining

whether a joint venture exists are:

> (1) the joint ownership and control of property; (2) the sharing of expenses, profits, and losses, and having and exercising some voice in determining the division of net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement.

*Id.* (citations and internal quotations omitted). The Tenth Circuit has recently noted that "these five factors are not exclusive or outcome-determinative." *See Meyer v. Christie*, 634 F.3d 1152, 1158 (10th Cir. 2011).

Mr. Stewart argues that none of the five factors weigh in Mr. Woolf's favor here[5] and that Mr. Woolf cannot show a joint venture as a matter of law. In particular, Mr. Stewart notes that he and Mr. Woolf did not jointly own or control property, did not share expenses or profits, and did not fix any salaries by joint agreement.

Nevertheless, the Court concludes that Mr. Woolf has submitted sufficient evidence to support the existence of a joint venture at this stage, including the following evidence: Mr. Woolf testified that Mr. Stewart shook his hand and told him, "Let's do this deal," and "We're partners in this deal," referring to their working together to win the bid from the Kansas regulators and Mr. Woolf's receiving a share in the revenue stream of the casino. In its September 2007 application to the State, Butler stated that

---

[5]Contrary to the argument in Mr. Stewart's reply brief, although Mr. Woolf argued in his response brief that a joint venture could exist under Kansas law even if none fo the five factors applied in a particular case, he did not concede that none of the factors applied here. *See* Memorandum in Response at 49-50.

it had engaged Navegante to "team with" Butler in the management of the casino, and that although an agreement had not yet been signed, there was an oral understanding that Navegante would receive a percentage of revenue, and Butler and Navegante were committed to entering into a formal written management agreement. In a November 2007 memorandum of understanding, Mr. Stewart reaffirmed those same statements from the application in describing Navegante's intended role. In February 2008, Butler's draft of a management agreement still included a provision for Navegante's receipt of at least a certain percentage of revenue. Mr. Woolf testified that he and Mr. Stewart were represented to be intended partners to the Kansas regulators. At a September 2008 hearing before the State, Mr. Stewart represented that Navegante would be sharing in the management fees and that Butler was "teaming with Larry Woolf and Navegante" regarding management of the proposed casino. Mr. Stewart wrote in an e-mail to one potential investor that "Larry and I agreed that we would work jointly to manage the place," and that Butler "will contract with Navegante to provide management services." Mr. Stewart and Butler told other potential investors that Mr. Woolf would be investing in the project and that Navegante or Mr. Woolf would participate in the management of the casino and receive management fees or a share of revenue. A Butler document concerning its intended presentation to the State notes that "Navegante is undisputed as being one of the best casino managers in the world" and that Larry Woolf "enjoys one of the best reputations in the industry;" sets out the pitch that the project "had partnered with the very best casino management company in the world;" and contains the word

15

"Partnership" underlined and circled next to that pitch.  Finally, both a member of the Kansas Gaming Facility Review Board and an expert consulting with the Board testified that they believed that Navegante was a partner with Butler in the project.

In *Terra Ventures*, the Tenth Circuit affirmed summary judgment in favor of the defendant and concluded that the parties' mere references to a "joint venture" in press releases did not constitute sufficient evidence of a joint venture in the absence of other evidence.  *See Terra Ventures*, 443 F.3d at 1245.  In the recent case of *Meyer*, however, the Tenth Circuit distinguished *Terra Ventures* and deemed sufficient evidence showing the following:  that the parties had agreed they would form a joint venture; that they had informed their employees and the public that they were jointly working on the project; that although they never shared expenses, they had agreed to share profits and losses; and that they had exercised some joint control over the project, including consulting with each other on various aspects, including negotiations with officials.  *See Meyer*, 634 F.3d at 1158-59.

Similarly, in the present case, the evidence indicates that the parties worked together to attempt to win the casino bid from the State, including finding potential financing and investors; that although they did not split expenses, they intended to split a share in the revenue of the casino; and that they intended to enter into a joint venture, as evidenced by the representations (including representations under penalty of perjury) to the State of Kansas and others, Mr. Stewart's statements to Mr. Woolf, and the Butler document referring to a "partnership".  Thus, as in *Meyer*, the evidence goes well beyond

16

the evidence found wanting by the Tenth Circuit in *Terra Ventures*.

Mr. Stewart notes that in January 2009, an attorney for Navegante confirmed that Navegante was to be an independent contractor and was not a fiduciary. The totality of the evidence, however, viewed in the light most favorable to Mr. Woolf, supports the allegation that Mr. Woolf entered into a joint venture with Mr. Stewart well before that time. From this evidence, the Court cannot say that no joint venture existed as a matter of law. Accordingly, the Court rejects this argument, and it therefore denies Mr. Stewart's motion for summary judgment on Mr. Woolf's claim for breach of fiduciary duty.

## VII.   Mr. Woolf's Fraud-by-Silence Claim Against Mr. Stewart

Mr. Stewart also seeks summary judgment on Mr. Woolf's claim of fraud by silence, which is based on the allegation that Mr. Stewart failed to disclose that he did not intend to allow Mr. Woolf to participate in the ongoing revenue stream for the casino project. The Tenth Circuit has set forth the elements of such a claim under Kansas law as follows:

> Under Kansas law, to establish fraudulent concealment, or "fraud by silence," the plaintiff must prove by clear and convincing evidence that: (1) the defendant had knowledge of material information the plaintiff did not have and could not have discovered through the existence of reasonable diligence; (2) the defendant had a duty to communicate that information to the plaintiff; (3) the defendant deliberately failed to communicate the information to the plaintiff; (4) the plaintiff justifiably relied on the defendant to communicate the information; and (5) the plaintiff was injured by the defendant's failure to communicate the

17

information.

*Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 910 (10th Cir. 2005) (citing *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245 (1999)).

A.   *Proof of Agreement*

Mr. Stewart first argues that proof of an agreement is required for this claim pursuant to *Gonzalez v. Allstate Insurance Co.*, 217 Kan. 262 (1975). The fraud claim addressed in that case, however, is not similar to the claim alleged by Mr. Woolf here. In *Gonzalez*, the plaintiff alleged that his automobile insurance company defrauded him by having a repair shop substitute used parts for the new ones the plaintiff believed would be installed. *Id.* at 262. The Kansas Supreme Court examined whether the jury's award of punitive damages could stand. *Id.* at 265. The court concluded that one acceptable basis for the award would be under a theory of "contractual fraud," whereby the insurer agreed to make the repair with new parts without any intention at that time of carrying out that promise. *Id.* Thus, the court held that the plaintiff was required to prove that independent agreement as a part of his fraud claim. *Id.* at 266.

In the present case, however, Mr. Woolf does not specifically allege that he entered into an agreement with Mr. Stewart, who fraudulently failed to disclose that he intended to breach that agreement; thus, this case does not involve the same type of "contractual fraud" that the court addressed in *Gonzalez*, and the case is inapt. Rather, Mr. Woolf alleges that he entered into a joint venture with Mr. Stewart, who made

18

representations that Mr. Woolf would share in the profits of the casino, and that Mr. Stewart fraudulently failed to disclose that he did not intend to allow Mr. Woolf to share in those profits once the bid had been won from the State. To be sure, Mr. Woolf will need to prove at trial that the joint venture did exist or that the affirmative representations were in fact made. *See infra* Part VII.C (duty to disclose arises from existence of joint venture or affirmative representations). Mr. Stewart has not cited any other case applying this requirement from *Gonzalez*, however, and Mr. Stewart has thus failed to show that Kansas law requires proof of an enforceable contract between him and Mr. Stewart for the particular fraud alleged here. The Court therefore denies this basis for summary judgment.

### B.     Knowledge of Material Information, Reasonable Diligence

Mr. Stewart next argues that Mr. Woolf cannot satisfy the first element set forth above for a fraud-by-silence claim, namely, that Mr. Stewart had knowledge of material information that Mr. Woolf did not have and could not have discovered through the existence of reasonable diligence. In this regard, Mr. Stewart essentially argues that, in light of the negotiations that took place, including the proposition and rejection of draft agreements, Mr. Woolf cannot show either that Mr. Stewart did not make his intention (that Mr. Woolf would not necessarily share in the revenue stream) known or that Mr. Woolf could not have discovered that intention.

The Court rejects this argument. As set forth above, Mr. Woolf has submitted evidence that Mr. Stewart repeatedly stated, including to the State of Kansas, that Mr.

Woolf or Navegante would share in the revenue stream and that a formal, written contract would in fact be executed to that effect.  Butler also authored draft agreements that included such provisions.  Such evidence, which must be viewed in Mr. Woolf's favor, is sufficient to create a question of fact concerning whether in light of the negotiation history and Mr. Stewart's statements, Mr. Woolf should have discovered that Mr. Stewart in fact intended that Mr. Woolf would not share in the casino's revenue stream.  Mr. Stewart has not cited to any authority indicating that this issue should be decided as a matter of law on this record.  Accordingly, the Court denies this basis for summary judgment on the claim of fraud by silence.

### C.    Duty to Disclose

The parties agree that under Kansas law, a duty to disclose arises from a fiduciary relationship.  *See Flight Concepts Ltd. Partnership v. Boeing Co.*, 38 F.3d 1152, 1158 (10th Cir. 1994).  Mr. Stewart argues that he had no duty to disclose anything to Mr. Woolf because no such fiduciary relationship existed.  As the Court concluded above with respect to Mr. Woolf's fiduciary duty claim, however, the existence of a joint venture giving rise to a fiduciary duty presents a question of fact in this case.  For the same reasons, the existence of a duty to disclose also presents a question of fact for trial.  Therefore, the Court rejects this argument for summary judgment on the fraud-by-silence claim.[6]

---

[6]In addition, Mr. Stewart has failed to reply to Mr. Woolf's alternative argument
(continued...)

D.    *Fraudulent Intent*

Mr. Stewart also summarily argues that there is no evidence of his fraudulent intent.  In response, Mr. Woolf cites to a September 2008 e-mail to a potential investor in which Mr. Stewart stated as follows:

> For now were are splitting the management fee of 2.5% of win and 5% of EBITDA with Larry Woolf at 60% to [Butler] and 40% to Woolf.  We could agree for the purposes of the side letter that we could change this after selection.  The Review Board and the KLC are counting on LJW to help us manage.  We have sold LJW to the Review Board and he has demonstrated that his [*sic*] has world class manager experience for this size casino.  We would need to carefully handle this move.

In reply, Mr. Stewart points to other evidence that Mr. Woolf told this investor that he would be amenable to allowing a different company to operate the casino; Mr. Stewart thus argues that Mr. Woolf could not have been deceived concerning any dealings with this investor.  Nevertheless, the quoted excerpt, viewed in Mr. Woolf's favor, provides evidence that Mr. Stewart was ready to remove Mr. Woolf from the picture once he had helped Butler secure the bid from the Kansas Review Board.  Moreover, Mr. Stewart's own theory, as noted above, is that he never committed to sharing revenue with Mr. Woolf, as demonstrated by the history of the written negotiations.  Thus, from this and other evidence, a jury could reasonably infer that Mr. Stewart did not intend to share

---

[6](...continued)
that Mr. Stewart's affirmative representations created a duty to disclose pertinent information.  *See, e.g.*, *Great Plains Christian Radio, Inc. v. Central Tower, Inc.*, 399 F. Supp. 2d 1185, 1196 (D. Kan. 2005).

revenue with Mr. Woolf, thereby creating a question of fact regarding Mr. Stewart's fraudulent intent. *See Metal Trading Servs. of Colo. v. Trans-World Servs.*, 781 F. Supp. 1539, 1543 (D. Kan. 1991) ("Intent to deceive is a state of mind and summary judgment is rarely appropriate where the factfinder must determine state of mind."). The Court therefore denies this basis for summary judgment.

### E.    *Justifiable Reliance*

Mr. Stewart also argues that Mr. Woolf could not have justifiably relied on the alleged failure to disclose in light of the history of the parties' negotiations, including Butler's rejection of agreements drafted by Navegante. As previously noted, however, even Butler's draft agreements at various times included provisions for Navegante to share in the revenue stream for the casino. The Court again concludes that Mr. Stewart's representations—including representations made under penalty of perjury to the State of Kansas that Mr. Woolf or Navegante would share in the revenue stream and that an agreement would be executed—provide a sufficient basis for the creation of a question of fact for the jury concerning the reasonableness of Mr. Woolf's reliance. The Court thus rejects this argument for summary judgment.

### F.    *Damages*

Finally, Mr. Stewart argues that Mr. Woolf has not suffered any damages in reliance on the alleged fraudulent concealment. Mr. Woolf responds that he seeks "benefit-of-the-bargain" damages in the form of a percentage of the casino's revenue stream. *See* Pretrial Order ¶ 10.C.1. Mr. Stewart has not provided any reason why that

remedy would not be available to Mr. Woolf in this case. *See, e.g.*, *Scholz Homes, Inc. v. Wallace*, 590 F.2d 860, 864 (10th Cir. 1979) (Kansas allows benefit-of-the-bargain damages in fraud and deceit cases). Therefore, the Court denies Mr. Stewart's motion for summary judgment on Mr. Woolf's claim of fraud by silence.

### VIII.   Claim by Butler and BHCMC for Declaratory Judgment

Butler and BHCMC seek a declaratory judgment to the effect that "neither Navegante nor Larry J. Woolf have any rights, beyond the rights set forth in the Consulting Agreement, to any ownership, income, or other interest in the Boot Hill Casino & Resort or any entity holding any such interest, including, but not limited to, [Butler and BHCMC]."  Pretrial Order ¶ 6.A.1.a.  Butler and BHCMC argue that, if Butler and Mr. Stewart are awarded summary judgment on the claims by Navegante and Mr. Woolf respectively, they should also be awarded summary judgment on this claim for a declaratory judgment.  Mr. Woolf's claims survive, however; thus, the condition for the motion by Butler and BHCMC has not been met.  Accordingly, the Court denies this motion for summary judgment.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion (Doc. # 146) by Butler, BHCMC, and Clark Stewart for summary judgment is **granted in part and denied in part**.  The Court **grants** the motion by Butler relating to Navegante's claims and awards summary judgment in Butler's favor on those claims (thereby

disposing of all claims in Case No. 09-2554-JWL); **denies** the motion by Mr. Stewart for summary judgment on Mr. Woolf's claims; and **denies** the motion by Butler and BHCMC for summary judgment on their declaratory judgment claim.

IT IS SO ORDERED.

Dated this 19th day of September, 2011, in Kansas City, Kansas.

<u>s/John W. Lungstrum</u>
John W. Lungstrum
United States District Judge