IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BUTLER NATIONAL SERVICE CORPORATION and BHCMC, LLC, | ) ) ) | CONSOLIDATED CASES |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 09-2466-JWL |
| NAVEGANTE GROUP, INC. and LARRY J. WOOLF, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| LARRY J. WOOLF, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 10-2444-JWL |
| CLARK D. STEWART, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

These consolidated cases presently come before the Court on the motion (Doc. # 142) by Butler National Service Corporation ("Butler"), BHCMC, LLC ("BHCMC"), and Clark Stewart to exclude expert testimony by Michael Rumbolz, an expert in the gaming industry, which testimony Larry Woolf intends to offer in support of his claims against Mr. Stewart.  For the reasons set forth below, the motion is **granted in part and denied in part**.  The motion is granted to the extent that Mr. Rumbolz may not testify

that the value of the benefit Navegante or Mr. Woolf provided to Butler equals a particular percentage of management fees.  The motion is denied in all other respects.

## I.    **Background**

This consolidated litigation involves, on one side, Butler and Mr. Stewart (President and CEO of Butler's parent company), and on the other side, Navegante Group, Inc. ("Navegante") and Mr. Woolf (Navegante's founder, CEO, and principal shareholder).  The litigation concerns the involvement of Navegante and Mr. Woolf in Butler's application to and eventual licensing by the State of Kansas to operate the Boot Hill Casino & Resort in Dodge City, Kansas.  Butler and its affiliate, BHCMC, seek a declaratory judgment to the effect that the rights of Navegante and Mr. Woolf in the project are limited to a consulting agreement.  Butler and BHCMC also allege that Navegante breached that agreement by failing to perform certain services.

Mr. Woolf asserts two state-law claims against Mr. Stewart.  Mr. Woolf first asserts a claim for breach of fiduciary duty, based on the allegation that the two men were joint venturers or partners.  Mr. Woolf also asserts a claim of fraud by silence, based on the allegation that Mr. Stewart failed to disclose that he did not intend to allow Mr. Woolf to participate in the ongoing revenue stream for the casino project.  Moreover, Navegante brought suit against Butler, asserting claims for unjust enrichment and negligent misrepresentation.  On September 19, 2011, however, the Court awarded summary judgment in favor of Butler on Navegante's claims.

## II.     Governing Standards

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert scientific testimony.  *See id.* at 589-93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999).  The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, this Court must undertake a two-part analysis: first, the Court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the Court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*.  *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).  The rejection of expert testimony is the exception rather than the rule.  *See* Fed. R. Evid. 702 advisory committee notes.

In the present case, the movants (collectively "Butler") do not take issue with Mr. Rumbolz's qualifications, but instead challenge only the reliability of his opinions.  In

3

determining whether the proffered testimony is reliable, the Court assesses whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be properly applied to the facts in issue. *See Daubert*, 509 U.S. at 592-93. The *Daubert* Court listed four factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Id.* at 592-94. In *Kumho Tire*, however, the Supreme Court emphasized that these four factors are not a "definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150. In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than the *Daubert* factors and scientific foundations. *Id.* (quoted in *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004)). The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

## III. <u>Opinion Concerning the Custom in the Gaming Industry</u>

As set forth in his expert report, Mr. Rumbolz offers two opinions, and Butler seeks to exclude testimony concerning both. Mr. Rumbolz's first opinion relates to the following question:

The extent to which it is normal and customary in the gaming industry, in

4

situations that involve competing bids for a project requiring state regulatory approval, for the parties participating in those bids to operate on a "handshake" or limited document basis and defer executing a formal written agreement until they are announced as the winning bidder.

On that question, Mr. Rumbolz opines as follows:

It is considered normal and customary throughout the North American gaming industry for otherwise unrelated parties, bidding jointly in a limited license jurisdiction, to complete the entire selection process with little or no formal contracts documenting the scope of their intended roles and responsibilities. Full and formal documentation is generally not completed until after the parties have been selected. The documentation of the relationship between Navegante and [Butler] was following a format that is familiar to anyone knowledgeable about the competitive bidding process in the gaming industry.

Among the reasons for his opinion, Mr. Rumbolz noted that losing bidders cannot recover expenses, and formal documentation is expensive; that bidders generally operate within a short time frame, and extensive time would be required for formal documentation; that under strict licensing standards, regulators place a premium on an applicant's honesty and integrity; and that applicants usually must define roles and responsibilities, and parties to the application process rely on such representations.

Butler first argues that the proposed expert testimony is irrelevant because a party may not offer such "custom and practice" evidence concerning the making of agreements in the face of a written agreement actually executed by the parties (the consulting agreement between Butler and Navegante). As it did in its summary judgment briefs, Butler argues that the existence of such a written agreement precludes any other oral agreement involving these parties. The Court notes, however, that the consulting

5

agreement did not contain any sort of merger clause; thus, the agreement does not necessarily foreclose the possibility of a separate agreement involving a subject not addressed in the consulting agreement (for instance, the sharing of management fees or a share in revenue). Indeed, as Mr. Woolf points out, the parties exchanged draft agreements for the sharing of management fees even after the consulting agreement was executed. Accordingly, the mere fact of the consulting agreement would not make evidence of a separate agreement irrelevant. In addition, because Mr. Woolf does not seek to interpret or modify the terms of the consulting agreement, the Court also rejects Butler's relevancy argument based on the parol evidence rule.

Butler also argues that evidence concerning the making of an oral agreement cannot be relevant because the statute of frauds would preclude the enforcement of any such agreement. Mr. Woolf's claims, however, are based on his undertaking a joint venture with Mr. Stewart (the "handshake" deal), and under Kansas law, the statute of frauds does not apply to the relationship between joint venturers. *See Meyer v. Christie*, 634 F.3d 1152, 1159 (10th Cir. 2011); *Goben v. Barry*, 234 Kan. 721, 728 (1984).

Moreover, Mr. Woolf argues that the evidence is relevant to whether any reliance by him on the alleged omissions by Mr. Stewart was reasonable. Butler has not challenged that use of the opinion in its reply brief. Accordingly, the Court rejects Butler's objections to the admission of this testimony based on relevancy.

Butler also argues that Mr. Rumbolz's first opinion is not reliable because it is not sufficiently connected to the facts of this case. In particular, Butler argues that Mr.

Rumbolz's opinion is based on the practice of Nevada gaming companies, and it therefore cannot apply to a gaming application process in Kansas. Butler cites Mr. Rumbolz's deposition testimony that he is "not offering any opinion here on course of dealings between gaming companies in Kansas." The Court rejects this argument. Butler has not cited any authority suggesting that an expert must have experience in the particular state at issue. Butler has not challenged Mr. Rumbolz's qualifications as an expert in the gaming industry; nor has Butler shown any differences between the gaming industry as it existed in Kansas at the time of the application process and the gaming industry in Nevada or elsewhere in the United States. *See P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F. Supp. 2d 1281, 1289-90 (D. Kan. 2009) (rejecting argument that expert gained his experience in California, not Kansas). Indeed, Butler has not addressed Mr. Woolf's citation to evidence that the State of Kansas relied on a Nevada consultant in the selection process. Moreover, it is Mr. Rumbolz's experience in Nevada that would be more relevant to whether Mr. Woolf, a Nevadan, acted reasonably in relying on the "handshake" deal. As noted above, Butler has not addressed this basis for the relevancy of Mr. Rumbolz's opinion.

Butler also argues that Mr. Rumbolz's opinion is not sufficiently connected to this case because he did not consider certain documents from the parties' negotiations and did not even read Mr. Woolf's complaint in this matter. Mr. Woolf's allegations of a "handshake" deal that was not formally documented and the representations made to the State of Kansas concerning a management role for Mr. Woolf make Mr. Rumbolz's

opinion relevant, however.  Whether Mr. Rumbolz considered or reviewed particular documents "is fodder for . . . cross-examination at trial, as these concerns go to the weight of the testimony, not its admissibility." *Id.* at 1290.

Finally, as noted above, the existence of the consulting agreement does not preclude the existence of other agreements involving these parties.  Therefore, the Court rejects Butler's argument that Mr. Rumbolz's opinion lacks reliability because he failed to place particular importance on that agreement.  For these reasons, the Court denies Butler's motion to exclude Mr. Rumbolz's testimony concerning his first expert opinion.

### IV.    Opinion Concerning the Nature and Value of the Benefit Conferred

Mr. Rumbolz's second opinion relates to the following question: "The nature and value of the benefit conferred by Navegante to [Butler], if any, in connection with the Boot Hill Casino & Resort."  On that question, Mr. Rumbolz opines as follows:

Navegante's involvement and assistance in the Request for Application process was a vitally important aspect of [Butler] wining the competition for the gaming operation in Ford County, Kansas.  Navegante provided gaming industry professionals and competitive bid veterans to assist in the preparation of materials for inclusion in the application that were essential to finalizing and completing the bid package.  Navegante also provided testimony to the selection Board, regarding the submission, which displayed an intimate knowledge and mastery of the topics under consideration.  In addition, Navegante's CEO provided the financial commitment of an equity infusion to the bidder that finally allowed the [Butler] application to be selected by the Board.

The value of the benefit Navegante provided to [Butler] would, at a minimum, be the net present value of the percentage management fees Navegante should have received from the Boot Hill Casino Resort, for the

first 15 years of the life of the contract, minus only the expenses that would be needed to generated [*sic*] those fees. This is an appropriate measure since [Butler] agreed to these percentage fees in the signed MOU and would not have won the bid were it not for the involvement of Navegante.[1]

Butler first attacks the relevance of this opinion. Butler argues that the opinion that Butler would not have won the bid without Navegante's involvement is speculation, and that the reason why Butler won is irrelevant. The Court rejects these arguments. Mr. Rumbolz's opinion concerning the importance of Navegante's involvement is supported by facts cited in his report, including Navegante's experience with applications, its access to gaming professionals and employees, its management of other properties, its liquidity and access to investors, Butler's representations to the State of Kansas regarding Navegante's assets and role, Navegante's participation in hearings before the State, Navegante's assurances to the State of sufficient equity contributions to the project, and Butler's inability to provide the equity infusion that the State and its advisors deemed important. That evidence is corroborated by testimony from State officials and its consultant concerning the importance of Navegante's participation, as well as Butler's own presentation to the State emphasizing's how Navegante's involvement set its application apart. Butler notes that the State was told that Butler would be the manager of the casino, but that fact does not mean that Navegante's

---

[1]In his deposition, Mr. Rumbolz testified that he used "Navegante" to refer to both that entity and Mr. Woolf. Butler has not challenged that aspect of Mr. Rumbolz's opinion.

involvement was not vitally important to the bid, as Mr. Rumbolz opines.

In addition, Butler has not responded to Mr. Woolf's argument that such testimony concerning the importance of Navegante's involvement is relevant to Mr. Stewart's motive in falsely representing, at least until the time the bid was won, that Mr. Woolf would share a management role, and the Court agrees that the testimony could be relevant to that issue. Butler's argument that this opinion cannot somehow be relevant or reliable in light of the existence of the written consulting agreement is rejected for the same reasons already discussed.

Butler also challenges this opinion's reliability. Butler again argues that Mr. Rumbolz's opinion is unreliable because he lacks gaming experience in Kansas, but the Court rejects that argument for the same reasons cited above with respect to his first opinion. Butler argues that Mr. Rumbolz should not be allowed to testify about an equity infusion by Mr. Woolf because Mr. Woolf never did contribute any equity to the project. In his report, however, Mr. Rumbolz relies only on Mr. Woolf's *ability* to make an equity infusion, and the fact that he did not eventually contribute does not make that opinion unreliable. Butler also notes that Mr. Woolf and Navegante did not actually review the application before Butler submitted it to the State; that fact, however, does not mean that Navegante's involvement in the project could not have been important. Accordingly, the Court rejects Butler's reliability arguments.

Nevertheless, Mr. Woolf has not shown the relevance of the proposed opinion by Mr. Rumbolz that the "value of the benefit" provided to Butler would be at least "the

10

percentage management fees" that Navegante "should" have received from the project. Mr. Rumbolz bases that opinion on Butler's agreement to those percentage fees in a memorandum of understanding and the fact that Butler would not have won the bid without Navegante. Mr. Rumbolz also noted in his report that it was common in the industry for the manager to receive a percentage of revenue and that he is "not familiar with any company in the gaming industry that would devote these types of resources and lend their years of experience to a project of this type for anything other than a percentage fee."

The Court has now awarded summary judgment to Butler on Navegante's claims; thus, there is no longer an unjust enrichment claim to which the "value of the benefit conferred by Navegante" (the subject of Mr. Rumbolz's opinion) might be relevant for purposes of damages. In his individual claim for fraud by silence, Mr. Woolf seeks "benefit-of-the-bargain" damages, that is, damages based on his receipt of the amounts promised to him. Similarly, damages from any breach of fiduciary duty must also relate to the particular joint venture to share profits that Mr. Woolf allegedly entered into with Mr. Stewart. Mr. Woolf has not explained how the value of his work, separate and apart from the amount established by Mr. Stewart's representations or the joint venture, would be relevant to damages or to any other issue. Nor has he explained the relevance of the opinion that managers commonly receive a certain percentage of revenue, or that no company ever involves itself in a bid for less.

Accordingly, the Court will exclude testimony by Mr. Rumbolz concerning his

opinion of the specific value of the benefit provided by Navegante or Mr. Woolf (found in the second paragraph of the second opinion in Mr. Rumbolz's expert report), and Butler's motion is granted to that extent.  The motion is denied in all other respects.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion (Doc. # 142) by Butler, BHCMC, and Clark Stewart for to exclude expert testimony is **granted in part and denied in part**, as set forth herein.

IT IS SO ORDERED.

Dated this 26th day of September, 2011, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge